May it please the Court, I'm Theodore Westbrook, I'm here on behalf of the appellant Laurie Ann Hoke, formerly known as Poole, who's in the courtroom with me today with her husband George. I would like to reserve four minutes of my time for rebuttal. The District Court's principal error in this case was declaring the enforceability of a modified mortgage loan agreement that the mortgagee had substantially breached by repudiating and refusing to accept payments under the modification agreement. The District Court ordered that Fannie Mae, the mortgagee, could foreclose if Mrs. Hoke did not make a lump sum payment, a catch-up payment, of $75,000 roughly, worth of payments that would have accrued during the time Fannie Mae was refusing to accept payments or recognize the modification at all. Any particular reason why your client didn't escrow payments or at least make some estimated payments? I know she wasn't under court order to do that, but she's been living in the house for an extended time without paying anything. I understand that, Your Honor, and I'm glad you asked that question. I think it is an important question to address. First of all, I think it's critical to note that she continued to make payments to the prior servicer, SunTrust Mortgage, after the modification agreement was entered and signed by both parties for over 11 months. I think it was 12 months of monthly payments under the terms of that modification. SunTrust refused to accept or apply them according to the terms of the modification agreement and essentially just repudiated the modification agreement from the beginning, started to impose default remedies for itself, started to threaten foreclosure, and then refused to accept payments altogether. I would point out that she sought an escrow order herself, or without an order, she could have set aside estimated payments for contingency, depending upon how the litigation was. That's true, Your Honor, and she did. She did start setting aside money. The problem becomes that she had to take legal recourse to try to get SunTrust and later Fannie Mae to recognize the modification, and so those escrowed funds had to be raided in order to pay attorneys. First for Chapter 13 bankruptcy proceedings, in which her entire goal was to get SunTrust Mortgage to accept the terms of the modification and start taking her payments again. Those attorneys had to be paid, and that's how they were paid, and ultimately that has continued into the present case, which was filed in late 2015, proceeded for two years during which Fannie Mae continually asserted that there was no such modification agreement. If there was one, it wasn't binding and it wasn't enforceable, and then they changed course right before summary judgment briefing and then decided to seek relief enforcing that modification agreement that they had repudiated years ago. What relief would you say is what should have been given? Because I think the lower court thought that you were asking that she just never have to pay and get to keep the house, period. I think you're right that the lower court seemed to believe that. Did you ever disabuse the court of that? I did, yes, your honor. What did you propose? The proposal, I think an equitable result, and I said this to the court below, an equitable result would be Fannie Mae gets a do-over on the modification agreement. Mrs. Hoke gets a do-over on the modification agreement. She would be required to resume payments under the terms that are outlined in the modification agreement, but should not be required to make an arrearage payment in a lump sum or face foreclosure under the modification agreement. She's not looking for a free house. She never has been looking for a free house. She's looking... I don't know why that isn't a free house then. Because she still has to pay it off. But you can't foreclose if she doesn't. No, your honor, no, no, no, your honor. That's not what I'm suggesting, your honor. What I am saying... Well, they have to come up with a new agreement. The other one seemed fine, but then they can't foreclose if you don't comply with it. Where's the incentive to comply with it? Well, your honor, first of all, I don't think that an equitable result has to entail a mortgage being torn up. That hasn't been our position either. Right, but I understand that. But if you have a position which is effectively that, then you have to defend that. Or is it not effectively that? I don't see that it is effectively that. Well, can you explain why not? Because it seems like it. Because resuming payments under the terms of the modification would ultimately repay the lender and... Why should she? They can't foreclose. I don't see why they couldn't. I thought you said the equitable result would be that they couldn't foreclose. No, your honor. And foreclose. If the payments going forward were not made, our position has been that. She doesn't have to pay the arrearage, is that what you're saying? That's the key. That's the key, your honor. Yes. Period. She doesn't have to pay it. Doesn't have to pay it at all. It's not that she has to pay it off eventually or when she gets the money. She just never has to pay it. That's correct, your honor, in this sense. That $75,000 catch-up payment includes things like interest that accrued, $25,000 of interest that accrued during the period of time when Fannie Mae was refusing to accept payments. Not penalties or anything like that? Correct, your honor. Correct. I would say that... The bank loses the time value of the money because it wasn't accepting it at the current time, is the idea. Correct, your honor. That's a result that would be equitable because it would excuse the performance of Mrs. Hope during the time of Fannie Mae's breach. If we reestablish that right and obligation to accept payments under the terms specified in the modification agreement... What was Fannie Mae's breach? Fannie Mae's breach was repudiating the modification agreement. Well, all they said was that there had been a mistake in calculating the amount and so they, I guess, went to correct the mistake in calculation and your client wouldn't hear of it. Is that how this whole dispute got started? This dispute got started so long ago that it even predates the 2010 modification agreement. But I would say starting at that point where there is a request for modification back in the 2009-2010 time frame, eventually SunTrust says, okay, we will do a modification agreement. They send modification paperwork to my client saying, sign this, we'll be all set. Our dispute over what the balance is, the escrow accounting, all that stuff will be over. They send her a package that says the new principal balance is $250,000+. She says, that isn't right. SunTrust says, oh yes, that wasn't right. We will send you a new package that has the correct information on it. They do that. She looks at it again and says, this still doesn't look right. It still looks like way too much money. They send her a third package that says the principal balance is $179,000 under the modified mortgage. She says, that makes more sense to me. I'm going to sign that one. She signs that one, sends it back. SunTrust also signs it. That's the modification agreement that's at issue in this case. Now SunTrust did, after that, say, oh, that was actually a mistake and you should sign this different one that says $193,000. My client says, we have a deal already. It's signed by everyone and you ought to comply with it. I would say that- That's where the mistake was made. They reassigned it or they treated it wrongly within their own internal processes. Is that correct? There was, as far as we can tell, there was- Is that correct? Yes, Your Honor. As far as we can tell, there was never any attempt to board that- All that previous stuff, because the previous stuff all got resolved in the final agreement. They just didn't, whatever their target is, assign it correctly or board it correctly or bond it correctly or whatever the word is. That's correct, Your Honor. They treated the loan as- You want to get contract relief for that, for the errors that they made based on that error of boarding it incorrectly, basically. Well, Your Honor- The relief you want is never having to pay for seven years or so. Is that correct? That's basically what I'm seeing now. Well, Your Honor, I would have to point out that the district court has, in ancillary litigation, dealt with this claim by SunTrust and by Citeris, the current servicer, who continued to claim that there was a mistake that avoided their obligation to comply with the modification agreement. The district court, the same judge that decided this particular- What was that? That's what you're talking about now in the record, this case. It is not, Your Honor. Then just tell us what's in the record. Okay. Okay, Your Honor. I'll give you the same argument that was given to the district court, which is a unilateral mistake is not a basis for getting out of or rescinding or repudiating a contract unless there is clear and convincing evidence of inequitable conduct or fraud on the part of the party that's trying to enforce the agreement. SunTrust was bound by the modification- Boarding error, whatever. Am I using the right word? Whatever the word they used. Well- But they put it into their machine wrong. Well, Your Honor, they decided not to put it into their system at all. They didn't put it into their system. Now the question is what- And the relief you want for that is excusal from having to pay for those seven years, basically. That's- That's the nature of your argument is they made a mistake and they should pay seven years of free living in the house for that mistake. Yes, Your Honor, but with that comes the obligation to make payments, the periodic payments that are specified. I understand, but you're still saying, though, that they don't have to pay for those seven years or however many years it was. I'd say that's correct, Your Honor. And that's a contract remedy for this mistaken board- Is that the word I'm forgetting, the word they use? Boarding it incorrectly. That's the word they use, Your Honor, yes. For boarding it incorrectly. That's correct, Your Honor, and the continual refusal- The argument, the district judge understood your argument to being it's a freebie from now on. Right. I would say, Your Honor, too- There may have been a misperception as to how much you were asking for, but you still were asking for a lot. I don't disagree, Your Honor. All right. What I do think, Your Honor, is that even if- Sorry to belabor it. I just didn't understand the nature of your argument. Oh, it's fine, Your Honor. We're here for you. But I would say even if the upshot of this were that there were no mortgage anymore, which I don't think is a necessary result here, there's still an obligation to make the repayment, and unsecured obligations are repaid all the time. We have the same incentive to repay unsecured obligations. We would have the same obligation here as we would have in the case of a credit card or any other sort of unsecured debt. And with that, Your Honor, I see my time has expired. Thank you very much, Your Honors. Thank you. Good morning, Your Honors. May it please the Court, Samantha Patwell for the Defendant Appellee, Federal National Mortgage Association, or Fannie Mae. Good morning. I think the Court has hit on this that she was seeking a contract remedy. So I want to first address the fact that this was not a breach of contract case. And we have heard, and it is in the record, that there are other cases pending. The trial court did make that reference, that argument. There's a separate case against Ceteris, the new servicer, and SunTrust, the old servicer. This case is against Fannie Mae, and there's actually no allegations in the complaint in this case that Fannie Mae breached a contract or that Fannie Mae caused damages. The allegations were that SunTrust had this boarding error, you stated correctly. And there are, as Judge Clay pointed out, issues with that. And those, I would say, are arguments for SunTrust to make. I think it gave them a benefit of $20,000 in their favor, something like that, and that was pointed out by the district court and maybe taken into consideration in his judgment as well. But for this case, the point is that it's only a declaratory judgment action. Let me ask you this. To what extent does Fannie Mae secede to the obligations and rights and remedies of SunTrust? And that wasn't briefed in this case because it was never alleged. There's an argument that they're the principal and there's an agent-principal relationship. Again, that was never proven. But if they are the principal, then they could take responsibility for the agent's actions in the scope of their authority. Here we would say this was not in the scope of their authority if they went outside of it and did something not called for in the arrangement. The only way that then Fannie Mae could be held liable for that, in a breach of contract action again, would be if Fannie Mae had accepted the benefits that were attendant to that. In this case, there were no benefits. Fannie Mae hasn't gotten any payments on the loan in now eight years. So there weren't benefits attendant to that. So I would say they can't be held liable for it. Are you arguing that the dealings between the plaintiff and SunTrust are not pertinent, relevant legally to these declaratory judgment actions that are presently before us? In a way, I am, because a big part of their position on appeal is that there was this whiplash-inducing change of position by Fannie Mae and that they suddenly decided that the modification was valid. In reality, Fannie Mae didn't really decide that the modification was valid or that there was a breach or any of those things that are being litigated in other cases. Fannie Mae decided that it wanted to be paid on its loan and that if she wanted to make payments on the modification, it would accept the modification and say, okay, let's concede the modification, let's accept that contract, let's move forward on that contract. Maybe it cuts out $16,000, $20,000 from our bottom line, but we want to proceed on this. She wants to stay in her house. There were discussions all through the case about these things. This was not whiplash-inducing. This was discussed by the parties. Then there's the issue of, well, we can't just move forward. If we want the modification enforced, then we need to proceed under the terms of the modification. The terms of the modification required these payments to be made, principal and interest. That's how mortgage payments are made, and it's a big part of a mortgage company's business. I don't think that's a secret, is the interest that goes into that. You have your principal portion, you have your interest portion, then you have escrows. You have the property taxes and the insurance. What we're talking about here is seven years of principal payment. Principal payments as well as that interest payment that goes into it, but not additional, not the time value of the money. But it is a big lump, right? Yes, it is a large amount, $75,000. Now take into account that $32,000 of that are property taxes and insurance payments that the servicer made on the property that she was living in and are not actual principal and interest payments. It's still a large amount, but again, the district court pointed out that $30,000 of that, if she was only making escrow payments during the course of this litigation, $30,000 of that would have already been in escrow. It all gets down to, as Judge Clay points out, it gets down to whether she saved it up. And if she didn't save it up, it looks like she's going to lose her house because she didn't save up this money. And if you and your predecessor had been recognizing this agreement, this modification agreement, that wouldn't have happened. And I think that's where it's important that this is a declaratory judgment action and not a breach of contract because maybe there are damages there. Judge Quist did point out that there could be damages there. And like I said, there are two other actions involving damages. And if she can't make those payments, maybe she can argue that she was excused and she couldn't have saved the money because of X, Y, and Z. And maybe she has some right to damages. But that's not an issue in this case. It wasn't alleged in this case. We didn't argue it below. The only allegations were, can Fannie Mae fulfill those? The way that could be spread out, though, it just seems like you would – Oh, absolutely, Your Honor. And we are not – there were plenty of discussions. I'm sorry? There were plenty of discussions of that. It was held out for just getting it as a freebie rather than spreading it out. Yes. And Judge Quist actually mentioned that as well on the record in considering this whole ordeal because at the end of the day, the legal enforcement of the contract, while it looks like a big amount, she was in the House for that long without making any payments. She did make some payments toward interest and property taxes, but only after 2014. So for four years there, she made absolutely zero payments. And then after that, no principal and interest payments. So I did just want to address – I mean, I think that's really at the heart of this case. But there were some other issues brought up about the affidavit. I think that saying that she waived the issues about the affidavit, essentially plaintiff argues that the district court fully relied on an affidavit submitted by an employee of Soteris that discussed the loan and stated that it was based on a review of the business records kept in the ordinary course of business of Soteris and the amounts at issue there. I think the first thing to point out is just that the review standard here is actually exercise of discretion because it's an evidentiary issue. But the district court didn't really make a ruling on this affidavit because there wasn't any sort of formal objection put in front of the district court. In fact, it wasn't even brought up at the hearing on the motion for summary judgment. So there's no real ruling here. And while the plaintiff states that he solely relied on that in rendering his opinion and entering this declaratory judgment, there's not really any evidence of that either. There were plenty of other documents and evidence that were put into evidence on how many payments she made. And I don't even think that that's disputed. It was 11 payments. I know Ms. Westbrook said 12 today. It was 11 payments, and through her deposition testimony, her husband's deposition testimony, the records from the loan file, which were produced in discovery, actually one of those account statements was attached to a plaintiff's brief in response to the motion for summary judgment below. There were property tax records, which were actually submitted by plaintiff. There was testimony about insurance payments. So I think the record is full of ways that the trial court could come to the numbers that it did. I also think that the affidavit was proper. You can rely on business records and still have the personal knowledge that's required to submit an affidavit. And that issue of plaintiff cites the case of Berry v. Lyon and also the rule 56C that comes along with it that where affidavits that contain hearsay, they cannot be considered unless the hearsay evidence could be presented in an admissible form at trial. What plaintiff doesn't make is any sort of argument why the affidavit couldn't be admitted in an admissible form at trial.  It has to be able to be presented in an admissible form. And she was the keeper, custodian of the records. They were business records. They were produced in discovery. They could definitely be admitted into evidence and there's just no argument why they couldn't be in the record. The argument on the affidavit issue is actually only one sentence below. It says, Fannie Mae never identified the affiant Olivia Davis as a person with discoverable information or knowledge and has not submitted any documents that support Ms. Davis' hearsay statements. And that's it. So that's why we're saying that it's not preserved. Just that this wasn't... Because I don't know that she necessarily had to move to strike the affidavit, but there had to be some significant objection to the affidavit. The last issue that I wanted to cover, which sort of ties back into the first, is this first substantial breach argument. Because, again, it's relying on a breach of contract claim, which is not at issue in this. But I actually think that the cases the plaintiff cites in this respect are really good examples of why the first substantial breach doctrine does not apply here as far as relieving her from liability from her mortgage, either entirely or even for the period of eight years. In the Catalan case, which was the Seventh Circuit case, that was a breach of contract case where they specifically allege damages, including the denial of credit on a business loan and other credit applications, and then also emotional damages. The Seventh Circuit held that plaintiff's failure to make a single payment in that case may have been excused, such that a jury could still find that the mortgage company was liable for damages. The quote is, a reasonable jury could conclude that the plaintiffs were doing their best to hold up their end of the bargain and were not squandering their uncashed mortgage payments, and then they were able to send more money than was asked for by the mortgage company.  And I think in that respect there was an argument made today that she was continuously trying to apply these payments. There was actually, if you look at the timeline of the litigation, because it has been a while, but there was a time period between the bankruptcies that were discussed and when foreclosure proceedings started of over a year where she was just silently not making any type of payments, not trying to get the court's intervention to get them to enforce the terms of the modification or do anything else. There was 12 months that went by where just no payments were being made. And the Ketterling case just goes to show that some effort needs to be made to make up those payments. And in that case, then a reasonable trier of fact could find the fact that one missed payment, that could excuse the borrower and she could still have a breach of contract claim for those damages. Again, I would say that those issues are being litigated in different cases than this one. Unless there are any additional questions, I would just rest on I think what's already been said, that while this seems like a bit of a tough nut to swallow, it is the proper result under both equity and the law, and we would ask this court to affirm the decision of the trial court. Thank you very much. Any rebuttal? Thank you, Your Honor. I would point out in response to what my opposing counsel just said that enforcement is a key term here in Michigan law. Michigan law is quite clear, like the common law everywhere. A contracting party cannot enforce an agreement that is substantially breached. This court in 1998 articulated it pretty well in the case of Chrysler International Corporation. He who commits the first substantial breach of contract cannot maintain an action against the other contracting party for failure to perform. I don't see how there's any other way to frame what Fannie Mae tried to do through its request for declaratory relief other than enforcing a contract that it previously substantially breached. Here's where I want to ask. Was the district court reasonable in interpreting that argument as an argument that you never have to pay? It sounds like it. Like if we said, yes, that sounds right, then you don't have to pay. It's a material breach, so you don't have to do anything else. I do think, Your Honor, the district court had fairly broad equitable powers and recognized that fact and was concerned about it. He would be arguing, no, it's a breach, breach of contract. You don't have to pay anymore. That's what he took it to be, and I can see how he would think it was. It sounds like it. Your Honor, I think that's what the law supports, but at the same time it would probably not be the equitable result. I think the court was cognizant of that and tried to formulate some sort of equitable remedy, but it turned out not to be equitable in the sense that it required this huge lump sum payment or Mrs. Hoke would face foreclosure, really not through her own fault. I would also say Michigan law is quite clear that the non-breaching party's performance is excused upon the other party's substantial breach. So even if we set aside this enforcement, enforcement of the contract by the substantially breaching party, we have the other arm of Michigan law, the non-breaching party's performance being excused. And there is good law from around the country on that. It's cited in our brief. I won't belabor any of that. I will say the point of agency, there can't be really any dispute that SunTrust Mortgage was Fannie Mae's agent. That's in the record. We've cited to it in our brief. Page ID 498, there's a letter. It says, SunTrust Mortgage Incorporated is the servicer of your loan and Fannie Mae is the investor of your loan. The communication's dating back to 2010 and before. That says it's Fannie Mae. SunTrust Mortgage Inc. is the agent, the servicing agent, and has all the powers that go along with it, the ability to bind the principal. I have to say I'm just absolutely confused by this notion that there was an offer by Fannie Mae to accept the modification at any time prior to October of 2017. I'm aware of nothing like that. I'm mystified by it. There was never an offer to spread out any reinstatement payments, nothing like that. It was an absolute 180-degree turn in October of 2017, the day before summary judgment briefing was due, and Fannie Mae says, We're going to recognize the modification now, and tomorrow we're going to seek a remedy enforcing that modification agreement that we have adamantly refused to recognize for seven years. I have to say, too, Mrs. Hope has made insurance and property tax payments. They haven't all stuck. She has tried to make those payments, and then a servicer will also make the payments, and then the payments will bounce back from the payee to Mrs. Hope. So it sort of looks like these things keep stacking up and stacking up, where the servicers are making more payments, making it more and more inequitable for Mrs. Hope to keep the property. Well, that's just not the case. She keeps trying to make those payments, and they keep bouncing back to her. With that, I see that my time has expired. Unless the Court has any further questions, I would just conclude there. Apparently not. Thank you, Your Honors. Thank you very much, and the case is submitted.